J. P. GIBBONS v. HARLAN P. SHERWIN ET AL.

[FILED DECEMBER 4, 1889.]

1. **Instructions** given and refused examined, and *held*, no error in such giving and refusal.

2. **A written instrument** set out in the opinion construed, and *held*, to evidence a sale, and not merely an option to purchase.

ERROR to the district court for Lancaster county. Tried below before FIELD, J.

*J. R. Webster*, for plaintiff in error:

An instruction is erroneous which tends to mislead the jury or withdraw from it a question of fact. (*Esterly v. Van Slyke*, 21 Neb., 614; *Severance v. Melick*, 15 Id., 614; *Harrison v. Baker*, Id., 46; *Meredith v. Kennard*, 1 Id., 319.) A party has a right to have instructions given without modification when they are proper and not covered by other instructions. (*Severance v. Melick, supra; Housel v. Thrall*, 18 Neb., 488; *Matthewson v. Burr*, 6 Id., 320.)

*I. W. Lansing*, and *Robert Ryan, contra:*

The instructions given omit no points asked by plaintiff in error and are as favorable to him as the law of the case would warrant. (*Love v. Miller*, 53 Ind., 294; *Phillips v. Morrison*, 3 Bibb [Ky.], 105; *Atkinson v. Brown*, 20 Me., 67; *Atwood v. Cobb*, 16 Pick. [Mass.], 227; *Moses v. Bierling*, 31 N. Y., 462; *Wylie v. Bank*, 61 Id., 416; *Clendenan v. Pancoast*, 75 Pa. St., 213; *McArthur v. Slason*, 53 Wis., 41; *McGavock v. Woodlief*, 20 How. [U. S.], 221.)

COBB, J.

This cause was brought on error to review the judgment of the district court of Lancaster county.

The plaintiffs below, Harlan P. Sherwin, Frank Sherwin, and James H. Pinkerton, partners under the name of Sherwin, Sherwin & Co., doing business as real estate agents at Lincoln, Nebraska, complained of J. P. Gibbons, defendant, that on April 1, 1887, the defendant placed with them as agents certain real estate, to-wit: Ten acres of land out of the southwest quarter of section 18, town 10, range 7, in said county, with instructions to sell the same on the following terms: $15,000; $500 cash, $1,750 in fifteen days, $1,000 in thirty days, $1,500 in sixty days, $1,500 in ninety days, $2,000 in four months, and the balance to remain as a deferred payment on the land. The

plaintiffs sold the same in the early part of April, 1887, upon the terms authorized, and became entitled to receive $400 as commission for their services, which they demanded, and which the defendant refused to pay, and they pray judgment for the amount with interest.

The defendant answered and denied each and every allegation in the petition contained; and, for a second defense, set up that on April 1, 1887, he placed the premises for sale with the plaintiffs at other and different terms than those stated by plaintiffs, calling for much larger cash payments than therein alleged; that on the 3d or 4th day of April plaintiffs, by telegraph, falsely stated to the defendant that they had sold said premises under the terms fixed by defendant, and called him to Lincoln from the county of Saunders, and informed him that Mrs. L. W. Colby, and Isabel Bond were in treaty jointly to purchase the premises, but on different terms than stated, with a small cash payment of only $500 on a sale at $15,000, and on the representations of the plaintiffs respecting the ability of Colby and Bond to perform their contract, he authorized the plaintiffs to make a sale to them, if the same were done on their proposal, and he informed thereof by 12 M., April 6, 1887; that afterwards Colby receded from her proposal, and refused to join with Bond in the purchase, and the plaintiffs, without authority, then attempted to perfect the transaction on such special terms with Bond alone as the purchaser. Nor did they inform defendant of such attempted sale by noon of April 6, following, but later in the day informed defendant that the terms, specially by him made, had been accepted, and transmitted a draft for $500, as paid by the purchasers, inducing defendant to come to Lincoln and complete the transaction, and, when defendant arrived at Lincoln and ascertained the true state, he refused to consummate or accept the proposal to sell the premises on such terms to Isabel Bond alone, and wholly terminated the plaintiffs' agency, and returned

to Bond her draft, which she accepted, by which no commissions were ever earned or due to plaintiffs.

And for a third defense, and for affirmative relief, the defendant says that on April 3, 1887, the plaintiffs, being their agents to sell certain real estate of defendant according to the terms to them given, falsely informed defendant that said premises had been sold under their agency, and requested defendant to come to Lincoln to consummate such sale, which defendant at great expense, on the faith of such false reports from them, did, and afterwards on April 6, 1887, in violation of instructions to them, they pretended to sell said premises to Isabel Bond, and again falsely informed defendant that they had sold the premises in accordance with instructions under a proposal communicated to him under their first false report aforesaid; and thereby again induced the defendant to come to Lincoln, at great expense, and on his arrival found that plaintiffs, without authority, had signed his name to a contract for sale of said premises to Isabel Bond, and finding his affairs so meddlesomely complicated by the action of plaintiffs, he had to have recourse to legal counsel, and was put to great expense in getting advice, and the loss of time in extricating himself, to his damage $40.

The plaintiffs moved to strike out the third defense of the answer of defendant, for the reasons that the same was not set up in the court below, and was different and new matter of defense, which motion was sustained and the third defense was stricken out.

There was a trial to a jury with a verdict for the plaintiffs of $452.89.

The defendant's motion for a new trial was overruled, and having taken exceptions on the record the case is brought by the plaintiff in error to review the judgment of the court below on the following assignments of error:

1. The court erred in excluding the evidence of the pendency of negotiation by defendant to enter into another

business that required him to determine on that day of the transaction in controversy.

2. In giving the eighth instruction on its own motion.

3. In giving the seventh instruction on its own motion.

4. In refusing the instructions requested by defendant, Nos. 1, 2, 3, 4, 5, 6, 7, 8, and 9.

5. In overruling the motion for a new trial.

6. The verdict is contrary to the evidence and the instructions of the court.

There were two principal questions submitted to the jury: First, whether the instructions of the plaintiff in error to Sherwin and company constituted an authority to make the sale in controversy to the parties to whom the sale was afterwards claimed to have been made, or whether that authority restricted them to a sale to Bond and Colby. There was conflicting evidence upon this point, which it is not deemed necessary to set out at length. It appears from the bill of exceptions that Gibbons had left the sale of the ten acres of land in question in the hands of the Sherwin Co., as real estate agents, under certain verbal instructions not stated in the evidence. On April 1, 1887, he wrote the Sherwins instructing them to keep the land on the market at the price of $15,000 and on the following terms of payment: Cash $2,250, in thirty days $1,000, in sixty days $1,500, in ninety days $1,500, in four months $2,000, and the balance, $6,700, to be secured by mortgage on the property, due January 5, 1889, at eight per cent interest, the mortgagee to receipt for payments in sums not less than $500, at any time when tendered before due, and to release on such lots as are selected by the mortgagor in proportion to the amount of mortgage. Subsequently, and prior to the 4th of April following, the Sherwins received an offer of purchase for the land from Mrs. Isabel Bond, of $15,000, on payments in a manner somewhat different from the terms of Gibbons; precisely what that difference was does not fully appear,

but it does appear that the cash payment was to have been less, and consequently the time payments correspondingly more than that of Gibbons. This offer was accepted by the Sherwins conditional of its being approved by Gibbons; and on the 4th of April they telegraphed Gibbons that the property was sold, and for him to come up to-morrow. On the next day, April 5, Gibbons was at the office of Sherwin & Co., and learned from them the acts stated. What these facts were, and what Sherwin & Co. then informed Gibbons, as to the party, or parties who had made the proposition to purchase, which had been conditionally accepted, are involved in a considerable degree of uncertainty.

It appears from the cross-examination of Mrs. Bond (as a witness on the part of defendants in error), that she was the active party in negotiating this purchase; that at that time she and Mrs. L. W. Colby were doing some business together, and that it was her understanding—to use her language—"that she supposed, at that time, that Mrs. Colby was going in with her." There was the sum of $100 earnest money paid down to Sherwin & Co. on this conditional purchase. The money, Mrs. Bond states, was all her own, though it was paid as that of Bond and Colby, because "she supposed Mrs. Colby was going in with her."

It further appears from Mrs. Bond's evidence that Mrs. Colby was to have sent her $100, to go into this business immediately, the next morning after her payment of that amount, and (to use her words) "that did not come, that left her out, and they made a new deal after that." It also appears from her evidence that after Mrs. Colby was left out Mrs. L. C. McLennan joined Mrs. Bond in the purchase, but finally, and before its consummation, she, in turn, drew out.

To return to the interview between Gibbons and the Sherwins on April 5: It appears that Gibbons came to

their office early in the day and was informed of the particulars of the pending proposition to purchase the land, which had been accepted, subject to his approval. It does not appear to any certainty whether he was informed that the conditional purchase had been made by Mrs. Bond alone, or in connection with Mrs. Colby, so far as the evidence on the part of plaintiffs below shows. Indeed it is left in entire doubt, so far as their evidence goes, whether the plaintiffs below informed their principal at all of the names or personnel of the purchaser. Gibbons, however, did not accept or approve of the terms of the conditional sale, but according to the evidence of defendants in error he made and gave them a counter proposition, which one of the agents set down in pencil on the face of the letter of April 1, as follows : " Cash $500, in fifteen days $1,000, in thirty days $1,750, leaving the terms as to the balance of the payments, the mortgage, etc., unchanged." Upon these new terms being given, Mr. Frank Sherwin, as he states in his evidence, spoke up and said that "he would take these terms and go to their party, and see if he could make the sale on them." In answer to the question, whether he then stated who that party was, he said, " I think I did ; I think I mentioned Mrs. Bond ; I believe so," and stated that he went and saw Mrs. Bond, and talked with her, and gave her the terms ; that she said she thought she could make it, but thought she would have to make some different arrangements, in some way ; that witness returned and told Mr. Gibbons and his partners, in their office, what Mrs. Bond had said. It seems that Gibbons was in a hurry to return home, as it approached train time, and as the witness puts it, said, " Well, boys, we will leave it just that way, and I will give you till noon to-morrow to close the sale on my terms that I have made." The witness also testified that Gibbons wished to be notified at once, if they made the sale. In reply to the question, what, if anything, was said during that conversa-

Gibbons v. Sherwin.

tion about Mrs. Colby being a party to the purchase, the witness answered "there was nothing said."

The testimony of the plaintiff in error, in his own behalf, conflicts sharply with that of the defendants on that point, so that it was a question for the jury whether authority was given to sell generally, or to Mrs. Bond alone, or was restricted to a sale to Bond and Colby.    It will be admitted that this question was required to be fairly given and stated to the jury, by the court, in proper instructions. For this purpose the defendant in the court below presented four instructions specially applicable to this point. These were refused, and the court, upon its own motion, gave the fifth instruction of the court's series, which, though not so complete and exhaustive of the question, is comprehensive, and seems to fairly present the subject to the jury, and was given without exceptions, on the trial, by either party.    The instruction is possibly open to the objection of counsel, in his argument, that it refers to a possible ratification of the sale by the defendant, of which there was no evidence; but as the instruction was delivered by the court without objection, and without exception being taken, that point will not be further considered here.

The second question presented is, whether there is a sale in fact by Sherwin & Co. such as would entitle agents to charges for commissions thereon from Gibbons, or whether the alleged sale was merely an option to buy, to purchasers.    This question must be decided chiefly, if not wholly, by the terms of the receipt given by Sherwin & Co. in the name of Gibbons for the cash payment made by the alleged purchasers as follows:

"$500.            LINCOLN, NEB., April 6, 1887.

"Received of Mrs. M. Isabel Bond and J. C. McLennan, five hundred dollars, as part of the purchase money on the W. $\frac{1}{2}$ of the S. $\frac{1}{2}$ of the S. W. $\frac{1}{4}$ of section 18, township 10 north, of range seven east, of the 6th P. M., in Lancaster county, and state of Nebraska.    The price of

said land is $15,000, of which twenty-two hundred and fifty dollars is to constitute the first payment, which must be paid on or before April 21, 1887, or this five hundred dollars is to be forfeited.    Upon the payment of the first payment of $2,250 I will deliver to the above named parties contracts, on which they are to make the following payments on said lands, viz :

"$1,000 to be paid May 6, 1887, on or before.

"$1,500 to be paid June 6, 1887, on or before.

"$1,500 to be paid July 6, 1887, on or before.

"$2,000 to be paid August 6, 1887, on or before.

"Upon the payment of which I will deliver a warranty deed to said premises subject to a certain mortgage of $6,750.    All of the above payments are to draw interest at the rate of 8 per cent.

"J. P. GIBBONS,<br>"By SHERWIN, SHERWIN & CO.,<br>" His Agents.

"Endorsed :  Filed October 11, 1887.    C. M. Parker, county judge."

It will be observed that this paper has no provision of an option to purchase.    It is an acknowledgment of $500 received as a part of the purchase money.    Its terms throughout are those of purchase and sale, subject to a specified forfeiture in case of default of the first payment by the purchasers.

I do not think that it can be doubted, conceding the authority of Sherwin, Sherwin & Co. to bind Gibbons by the contract of sale of the land to Bond and McLennan, had they complied with the terms by paying or tendering the first payment less the sum of $500, receipted, that they could have enforced the making and delivery to them of the contracts specified, against him.

The construction of this paper, as to its terms and effect, was a question of law for the court, and not a question for the jury uninstructed.    But the court was not requested to

instruct the jury as to its legal effect, but, on the contrary, was requested to instruct them that if they should find from the evidence that the contract attempted to be made by the plaintiffs for the defendant was a mere option to take the premises at the price stated, but that the purchasers were not bound to pay the price, but had the right to drop the contract by their forfeiture of the advance payment, then the jury should find for the defendant. This proposition was refused, and an instruction given that a sale such as would entitle the plaintiffs to a verdict must not be a conditional or optional one, and if the jury should find from the evidence that the alleged sale made by the plaintiffs was an option to take the premises at the price therein named, but that the purchasers were not bound to pay the price, but had the right, under the terms of the sale, to drop the contract on forfeiture of the advanced payment, they were then instructed that such a sale would not render the defendant liable.

This instruction was not objected to, nor exception taken by the defendant, and it is admitted in the brief of counsel that it is substantially the same as that requested to be given on the subject.

It is true that Mrs. Bond, in her testimony upon cross-examination, gave as her understanding of the terms of the contract, that she might by forfeiting the $500 paid abandon the contract and go no further with it, but it need scarcely be said that even in an action directly upon this contract she would not have been able to vary its terms by her own understanding and statement of its meaning, much less in the present collateral proceedings.

There was an additional question raised on the trial in the court below, and insisted on in the brief of counsel, that even if the Sherwins had authority to sell the land to the parties to whom they claim to have sold it, it was one of the terms and conditions of their authority that Gibbons should have notice of the sale by noon of the next day.

Counsel says, and truly, " that there is a conflict of evidence on this matter," and a proper instruction that if the jury found from the evidence (contrary to the testimony of the defendant) that the limitation was only that notice should be given, then the sending of notice (within the time limited) would be sufficient.

But counsel contend that the defendant, who proposed the terms, could fix all the elements of the proposal; that if he saw fit to make the acceptance depend upon the actual receipt of the notice, he could do so.

While I am inclined to the opinion that had the proof shown that the defendant had based his refusal to carry out the contract upon the fact that notice of the sale did not actually reach him until past noon of the 6th of April, he would have been entitled to the instruction as presented by his counsel, and that that part of the instruction, as given by the court and excepted to by counsel, would be held to be erroneous, it does not appear that he based his refusal upon that point.

Under date, from the record in this case, " Valparaiso, Neb., 5–5," probably intended for the date of April 6, Gibbons wrote to the Sherwins : " Your reply not coming by noon to-day, I supposed the matter was dropped.   *   * I am now going to Wahoo,   *   *   and cannot give a definite reply, as to whether I will accept or not, until I get back to-morrow   *   *   and see you later." On the same day he telegraphed, " Don't sell property on any terms until further notice."    As to the fact of notice, whether Gibbons' instructions to the agents were that they must sell the land, if at all, so that notice should reach him by noon of the 6th of April, or whether their authority to sell, on the terms given, must be exercised before 12 M. of that day, and that they should notify him immediately upon the consummation of the sale, there is a sharp and direct conflict of evidence, but it may be said that the weight is with the latter.    The correspondence of the defendant,

cited as of the 6th of April, does not imply that the time set for notice was the essence of the contract, or that the hour appointed was material to him.    While the general proposition that a vendor, proposing the terms of sale of land, may choose his own terms will not be disputed, yet when such party has employed the services of agents to assist in making such sale, and the agent has contributed time, labor, and skill in conformity with instructions, and in the act of successful negotiation the vendor sets a limit of time within which the sale must be terminated, or the agency withdrawn, and adds the further condition that the sale shall be closed and notice sent him at a distant post within a limited time, and the agent proceeds in good faith, and without laches on his part, to consummate the sale, and close it, so that information might be conveyed to the principal on the time limited, and promptly sends information of the fact by the usual channel, before the expiration of the time limited, and by any casualty or failure of the public mails, or telegraph, such information is miscarried and not re_ceived by the principal, I do not consider that the mis-carriage of the notice could deprive the agent of his right to recover for services actually performed on a *quantum meruit*.

The judgment of the district court is affirmed.

JUDGMENT AFFIRMED.


THE other judges concur.